UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

KELSEY BRUST; JESSICA BULALA;
LAURA LUDWIG; and all those
similarly situated,

        NO. 2:07-cv-1488 FCD/EFB

    Plaintiffs,

  v.                        MEMORANDUM AND ORDER

REGENTS OF THE UNIVERSITY OF
CALIFORNIA; LARRY VANDERHOEF;
and GREG WARZECKA,

    Defendants.

----oo0oo----

This matter is before the court on defendants' motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose defendants' motion. For the reasons set forth below,[1] defendants' motion is GRANTED in part and DENIED in part.

/////

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. Local Rule 78-230(h).

## BACKGROUND[2]

Plaintiffs Kelsey Brust ("Brust"), Jessica Bulala ("Bulala"), and Laura Ludwig ("Ludwig") are women and current students at the University of California, Davis ("UCD"). (Pls.' Compl. [Docket #1] ("Compl."), filed July 24, 2007, at ¶ 11). All are highly skilled athletes who participate in club sports at UCD and who desire and are eligible to participate in sports at the varsity level. (Id.) Plaintiffs filed this action on behalf of themselves and a putative class on July 24, 2007, contending that defendants have engaged in systemic discrimination on the basis of gender at UCD by failing to provide equitable varsity athletic opportunities for women and by eliminating existing female varsity athletic participation and scholarship opportunities at UC Davis. (Id. ¶ 1).

Plaintiff Brust enrolled at UCD in September 2006. (Id. ¶ 11(a)). Plaintiff Bulala enrolled at UCD in September 2005. (Id. ¶ 11(b)). Both Brust and Bulala are a field hockey players who have been involved in the sport since childhood and who played at a high level competitively in high school. (Id. ¶¶ 11(a)-(b)). Both have played field hockey on the UCD field hockey club team. (Id.) Plaintiff Ludwig enrolled at UCD in 2004. (Id. ¶ 11©). She is a wrestler and rugby player who wrestled in all four years of highschool. (Id.) She wanted to wrestle at UCD, but was unable to do so because UCD eliminated women's varsity wrestling. (Id.) Ludwog currently plays rugby on the UCD rugby club team. (Id.)

---

[2] The following facts are primarily derived from plaintiffs' complaint filed July 24, 2007.

2

Plaintiffs bring claims against defendant Regents of the University of California ("Regents" or "UCD"), defendant Larry Vanderhoef, Ph.D. ("Vanderhoef"), the Chancellor of UCD, and defendant Greg Warzecka ("Warzecka"), the athletic director at UCD.  (Id. ¶¶ 14-16).  Plaintiffs allege that Vanderhoef and Warzecka have authority over the athletic programs at UCD and that each has participated in or is otherwise responsible for the discriminatory actions and decisions alleged, including the continued inequitable provision of athletic participation opportunities and scholarships to female students.  (Id. ¶ 17).

Plaintiffs contend that UCD has a continuing practice of providing its male students with greater athletic opportunities. (Id. ¶ 23).  Plaintiffs allege that during the 2005-2006 academic year women comprised approximately 56% of the student population, but that women comprised only 50% of the participant on intercollegiate varsity teams offered by UCD.  (Id. ¶ 22). Plaintiffs also allege that UCD previously cut women from the varsity wrestling team on the basis of their gender, that UCD has failed to effectively respond to interest expressed by several women's sports club to obtain varsity status, that many women student athletes have an interest in varsity athletic opportunities and financial assistance that has not been satisfied, and that many prospective UCD students have similar interests that UCD has not addressed.  (Id. ¶ 25).

Plaintiffs bring four claims for injunctive and monetary relief: (1) a claim against UCD for violation of Title IX for failure to provide equal athletic opportunities and athletic financial assistance for women; (2) a claim for injunctive relief

3

against UCD and for injunctive and monetary relief against the individual defendant for violation of 42 U.S.C. § 1983 based on the Equal Protection clause of the U.S. Constitution; (3) a claim against all defendants for violation of the California Unruh Civil Rights Act; and (4) a claim against all defendant for violation of public policy based upon violations of the California Constitution and the California Education Code.  (Id. ¶¶ 26-89).  Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 26, 2007.  (Defs.' Mot. to Dismiss [Docket #20-26], filed October 26, 2007).

**STANDARD**

On a motion to dismiss, the allegations of the complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged.  See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983).  Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations."  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

4

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69, 73 (1984)).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F.Supp.2d 1035, 1042 (C.D. Cal. 1998).[3]

**ANALYSIS**

**I. Title IX**

Plaintiffs contend that defendant UCD[4] intentionally discriminates against female students by, *inter alia*, choosing to make fewer athletic opportunities available to female students

---

[3] Defendants request that the court take judicial notice of certain documents. These documents are not relevant to the court's analysis. As such, defendants' request is DENIED.

[4] Plaintiffs concede that they cannot seek punitive damages against defendant UCD. (Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls. Opp'n") [Docket #30], filed Nov. 30, 2007, at 1). Therefore, defendants' motion to dismiss plaintiffs' claims for punitive damages is GRANTED.

5

than to male students.  (Compl. ¶ 38).  Claims brought under an effective accommodation theory stem from the implementing regulations that provide:

> in determining whether equal athletic opportunities for members of both sexes are available, the Office of Civil Rights of the Department of Education (the office charged with enforcement of Title IX) will consider, among other factors, "[w]hether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes."

Pederson v. Louisiana State Univ., 213 F.3d 858, 865 n.4 (5th Cir. 2000) (citing Boucher, Boucher v. Syracuse Univ., 164 F.3d 113, 115 n.1 (2d Cir. 1999); 34 C.F.R. § 106.41(c)(1)).  In deciding whether a plaintiff can state an "ineffective accommodation" claim, courts look to the three part compliance test set forth in 44 Fed. Reg. 71,418.  Roberts v. Colorado State Bd. of Agriculture, 998 F.2d 824, 828-29 (10th Cir. 1993).  This provision sets forth that the analysis should include:

> (1) Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or
>
> (2) Where the members of one sex have been and are under represented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or
>
> (3) Where the members of one sex are under represented among intercollegiate athletes, and the institution cannot show a continuing practice of program expansion such as that cited above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully ant effectively accommodated by the present program.

44 Fed. Reg 71, 418 (1979).  The "substantial proportionality" prong "provides a safe harbor for recipients under Title IX."

6

1 Roberts, 998 F.2d at 829.  Defendants argue that plaintiffs'
2 claim for ineffective accommodation must fail as a matter of law
3 because the 6% disparity between female enrollment and female
4 varsity-level athletic participation alleged in the complain is
5 substantially proportionate for purposes of Title IX.

6 Courts have followed the Office for Civil Rights
7 instructions to its Title IX investigators that "[t]here is no
8 set ratio that constitutes 'substantially proportionate' or that,
9 when not met, results in a disparity or a violation."  Id.
10 (quoting Office for Civil Rights, Department of Education, Title
11 IX Athletics Investigator's Manual 24 (1990)); Beasley v. Alabama
12 State Univ., 3 F. Supp. 2d 1325, 1335 (M.D. Ala. 1998).  However,
13 "substantially proportionate" does require a "fairly close
14 relationship" between undergraduate enrollment and athletic
15 participation."  Id. at 830.

16 Plaintiffs contend that the actual disparity between the
17 number of women enrolled at UCD and the number of women
18 participants in varsity athletics at UCD is inherently a matter
19 of fact.  The 6% disparity alleged in the complaint and relied
20 upon in defendants' motion to dismiss is based upon statistics
21 disclosed by UCD pursuant to the Equity in Athletics Disclosure
22 Act ("EADA"), 20 U.S.C. § 1092, during the 2005-2006 academic
23 year.  (Compl. ¶ 22).  Plaintiffs do not contend that this number
24 is necessarily accurate.  Moreover, plaintiffs contend that even
25 if the 6% statistic is accurate, this disparity is not
26 "substantially proportionate" because, given the large size of
27 UCD's enrollment, more than 80 women are denied equal athletic
28 opportunity.  (Compl. ¶¶ 21-22).

The court agrees that the inquiry into substantial proportionality in this case presents issue of fact not appropriately resolved on a motion to dismiss.  Plaintiffs may be able to offer evidence that the disparity is greater than that disclosed by UCD.  Plaintiffs may also be able to present evidence that a 6% disparity has a disproportionate impact on women enrolled at UCD due to the size of its enrollment and athletic program; this disproportionate impact may affect the court's analysis of whether the athletic opportunities are "substantially proportionate."  Viewing the allegations of the complaint in the light most favorable to the plaintiffs and drawing all reasonable inferences therefrom, plaintiffs have sufficiently pled a violation of Title IX based upon ineffective accommodation.  Therefore, defendants' motion to dismiss plaintiffs' Title IX claim is DENIED.[5]

**II.   42 U.S.C. § 1983**

Plaintiffs bring claims under 42 U.S.C. § 1983 against UCD for injunctive relief and against the individual defendants for injunctive and monetary relief based upon alleged violations of the Equal Protection Clause.  Defendants argue that plaintiffs' § 1983 claim must be dismissed because it is subsumed by Title IX.

---

[5]   Defendants move to dismiss plaintiffs' claim under Title IX based upon unequal financial assistance.  In their opposition, plaintiffs clarify that they are not alleging a separate claim or an element of a claim based upon unequal financial assistance, but rather, that the factual allegations relating to financial assistance support their ineffective accommodation claim.  (Pls.' Opp'n at 1, 11).  Therefore, because plaintiffs are not pressing an ineffective accommodation claim, defendants' motion to dismiss this claim is DENIED as MOOT.

Plaintiffs claim that their section 1983 claim is not subsumed, but can coexist with their Title IX claims.

There is presently a split in circuit authority as to whether Title IX subsumes a claim under § 1983. Compare Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 179-80 (1st Cir. 2007) (holding that plaintiff's § 1983 claim based upon alleged Equal Protection Clause violations were precluded by Title IX's remedial scheme); Bruneau v. South Kortright Cent. Sch. Dist., 163 F.3d 749, 758 (2d Cir. 1998) ("[A] § 1983 claim based on the Equal Protection Clause is subsumed by Title IX), and Waid v. Merrill Area Pub. Sch., 91 F.3d 857, 862 (7th Cir. 1996) (holding that a plaintiff may not claim that a single set of facts leads to causes of action under both Title IX and section 1983), and Pfeiffer v. Marion Ctr. Area Sch. Dist., 917 F.2d 779, 789 (3d Cir. 1990) (same), and Travis v. Folsom Cordova Unified Sch. Dist., 2007 U.S. Dist. LEXIS 11566 (E.D. Cal. 2007) (holding that "Title VI is sufficiently comprehensive to evince congressional intent to foreclose a § 1983 remedy"), with Communities for Equity v. Mich. Hish Sch. Athletic Ass'n, 459 F.3d 676, 683-86 (6th Cir. 2006); Crawford v. Davis, 109 F.3d 1281, 1284 (8th Cir. 1997) (holding that Title IX has no preemptive power over section 1983 claims), and Seamons v. Snow, 84 F.3d 1226, 1233 (10th Cir. 1996) (holding that plaintiff has independent rights under Title IX and under § 1983), and Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 722-23 (6th Cir. 1996) (holding that a § 1983 claim seeks to enforce distinct and independent substantive due process rights).

Section 1983 does not create substantive rights, but provides the procedural framework for a plaintiff to bring suit for violations of federal rights. "Section 1983 supplies a cause of action to a plaintiff when a person acting under the color of state law deprives that plaintiff of any 'rights, privileges, or immunities secured by the Constitution and laws of the United States.'" Bruneau, 163 F.3d at 756 (citing 42 U.S.C. § 1983). However, § 1983 does not provide a remedy for violations of all federal statutes. "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 20 (1981). In determining if Title IX precludes resort to § 1983, courts consider (1) whether plaintiffs' Title IX claims are "virtually identical" to their constitutional claims, and (2) whether the remedies provided in Title IX indicate that Congress intended to preclude reliance on § 1983. Smith v. Robinson, 468 U.S. 992, 1009 (1984); Communities for Equity, 459 F.3d at 685. While the Ninth Circuit has not decided the specific issue of whether § 1983 claims are subsumed by Title IX, it has recognized that federal statutes may preclude a § 1983 remedy if they are sufficiently comprehensive. See, e.g., Dittman v. California, 191 F.3d 1020, 1028 (9th Cir. 1999); Dep't of Educ. v. Katherine D., 727 F.2d 809, 820 (9th Cir. 1983). The court agrees with the reasoning of the Second Circuit in Bruneau that, under the Sea Clammers doctrine, Title IX's enforcement scheme is sufficiently comprehensive to subsume plaintiffs' virtually identical § 1983 claims and demonstrate

that Congress intended to preclude § 1983 claims when it enacted this statute. See Bruneau, 163 F.3d at 756-57. Contra Communities for Equity, 459 F.3d at 685-86.

Plaintiffs' complaint alleges that defendants violated the Equal Protection rights of UCD female students "by offering them fewer athletic participation and scholarship opportunities than males" and by offering more scholarship opportunities to men." (Compl. ¶ 53). Plaintiffs' § 1983 claim is based upon the same factual predicate as their Title IX claim. As such, their claims are under Title IX and the Equal Protection Clause are virtually identical. See Smith, 468 U.S. at 1009; Bruneau, 163 F.3d at 758.

Moreover, Title IX's administrative enforcement scheme is complex and designed to ensure compliance with its mandates. Bruneau, 163 F.3d at 756. Under the enforcement scheme, injured persons can file a complaint with the Department of Education ("DOE"), see 34 C.F.R. § 100.7(b) (1997), and the DOE must then investigate the allegations. Id. § 100.7(c); Bruneau, 163 F.3d at 756. The DOE may also periodically conduct its own compliance reviews without a complaint. Id. § 100.7(a); Bruneau, 163 F.3d at 756. If the DOE concludes that a complaint has merit or discovers violations stemming from its own reviews, the DOE will notify the institution and attempt to reconcile the situation through informal means. Id. § 100.7(d); Bruneau, 163 F.3d at 756. If the DOE is unsuccessful, it may ultimately terminate federal funding to the institution after an administrative hearing. Id. § 100.8; Bruneau, 163 F.3d at 756. As such, Title IX provides a comprehensive administrative remedial scheme.

Further, in addition to the robust administrative remedial scheme, the Supreme Court has held that Title IX provides individuals with a private cause of action. See Cannon v. Univ. of Chicago, 441 U.S. 677, 709 (1979). "Once in court, the Title IX plaintiff has access to a full panoply of remedies including equitable relief and compensatory damages." Bruneau, 163 F.3d at 756 (citing Franklin, 503 U.S. 60, 73-76 (1992)). The fact that Title IX provides a private remedy in the courts provides further support for Congress' intent to subsume a § 1983 remedy with Title IX. Id. at 757 (holding that the legislative history of Title IX that demonstrates clear Congressional intent to provide a private right of action as a remedy to secure enforcement also demonstrates Congressional intent to subsume a § 1983 claim based upon the same deprivation of rights).

Therefore, given Title IX's administrative and judicial remedies, the court adopts the rationale of the Second Circuit and finds that it was Congress' intent "that a claimed violation of Title IX be pursued under Title IX and not § 1983." Bruneau, 163 F.3d at 757; see Pfeiffer, 917 F.2d at 789; Travis, 2007 U.S. Dist. LEXIS 11566 at *15-16 (holding that Title VI precludes claims brought pursuant to § 1983 arising from the same facts).

Plaintiffs contend that Title IX does not provide a remedy for constitutional rights and thus, it cannot subsume a claim for violation of their rights to equal protection. In support of their assertion, plaintiffs cite the decisions from the Sixth, Eighth, and Tenth Circuits, which have carved out an exception to the Sea Cambers doctrine for constitutional rights. See Crawford, 109 F.3d at 1284; Seasons, 84 F.3d at 1233; Lillard, 76

12

F.3d at 722-23.  Generally, these Circuits reasoned that although the claims may arise from the same factual basis, the Equal Protection clause gives rise to distinct and independent substantive due process rights separate and apart from those rights protected by Title IX.

Plaintiffs' argument is unpersuasive.  In Sea Cambers, the Supreme Court focused on the available remedies in deciding whether a claim under § 1983 was precluded by a federal statutory scheme.  453 U.S. at 13, 20.  The constitutional right exception focuses on the nature of the underlying right, an inquiry not focused upon by the Court in Sea Cambers.  Rather, in Smith v. Robinson, the Supreme Court found that the Education of The Handicapped Act ("EA.") provided a sufficiently comprehensive enforcement scheme, such that it demonstrated Congress' intent to preclude a claim under § 1983 for an alleged Equal Protection Clause violation.  468 U.S. at 1013[6] ("We conclude, therefore, that where the EA. is available to a handicapped child asserting a right to a free appropriate public education, *based either on the EA. or on the Equal Protection Clause of the Fourteenth Amendment*, the EA. is the exclusive avenue through which the child and his parents or guardian can pursue their claim.") (emphasis added).  Therefore, the court finds that there is not an exception to the Sea Cambers doctrine based upon plaintiffs' assertion of a constitutional right.

---

[6] Congress subsequently amended the EA. to explicitly provide that the EA. is not the exclusive remedy.  20 U.S.C. § 1415(f).  However, this subsequent amendment to statute does not modify the analysis of the Supreme Court and its clear indication that there is not a constitutional exception to the Sea Cambers doctrine.

13

Plaintiffs also argue that their § 1983 claim cannot be subsumed by their Title IX claim because their § 1983 claim is pressed against not only UCD, but also against the individual defendants who are not named in their Title IX claim. Plaintiffs misconstrue the doctrine of preemption. See Boulahanis v. Bd. of Regents, 198 F.3d 633, 640 (7th Cir. 1999). Through the enactment of Title IX and its remedial scheme, Congress created a regime "for the redress of sex discrimination in athletic opportunities at federally-funded institutions." Id. That regime need not include the ability to press claims against both the institution and the individuals involved. Id. Rather, "[t]he fact that individual claims are not available under Title IX means that Congress has chosen suits against institutions as the means of redressing such wrongs." Id. (citing Sea Cambers, 435 U.S. at 20); see also Fitgerald, 504 F.3d at 178 ("Sanctioning section 1983 actions against individual school officials would permit an end run around [] manifest congressional intent" to aim the weaponry of Title IX at the recipient of federal funds); Waid v. Merrill Area Pub. Sch., 91 F.3d 857, 862 (7th Cir. 1996) ("Congress intended to place the burden of compliance with civil rights law on educational institutions themselves, not on the individual officials associated with those institutions."); Travis, 2007 U.S. Dist. LEXIS 11566 at *16 ("Allowing Plaintiffs to plead around the detailed statutory scheme created by Title VI by pleading a § 1983 claim against [the defendant] in his individual capacity would be inconsistent with Congress' creation of restrictions on Title VI claims."). As such, plaintiffs' argument that their §

14

1983 claim is not subsumed by Title IX because and to the extent it is asserted against the individual defendants is without merit.[7]

Therefore, because plaintiffs' § 1983 claim based upon an alleged equal protection violation is subsumed by Title IX, defendants' motion to dismiss plaintiffs' § 1983 claim is GRANTED.

**III. State Law Claims**

Finally, defendants argue that plaintiffs' state law claims against them should be dismissed because they are immune from suit. Plaintiffs concede that the Regents (UCD) are immune from their state law claims. The individual defendants contend that they are also immune from suit based upon the discretionary immunity accorded public employees pursuant to California Government Code § 820.2.[8]

Section 820.2 provides immunity to a public employee for injuries resulting from "his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2 (West 2007). Generally, "a discretionary act is one

---

[7] The court clarifies that it does not address the issue of whether a plaintiff could bring a § 1983 claim based upon a separate and independent wrong by an individual defendant because, in this case, plaintiffs sue the individual defendants based upon their administration of the Athletic Department at UCD, the same factual basis for their Title IX claim against the educational institution. See Fitzgerald, 504 F.2d at 180.

[8] Defendants assert numerous arguments in support of their assertion that plaintiffs' state law claims against them should be dismissed. However, as set forth *infra*, because the court finds that discretionary immunity applies to defendants' alleged conduct, the court does not address the merits of those arguments.

15

which requires the exercise of judgment or choice." Kemmerer v. County of Fresno, 200 Cal. App. 3d 1426, 1437 (1988). However, California courts have not set forth a definitive rule which resolves every case. Id. Rather, the California Supreme Court has adopted an analysis that relies on the "policy considerations relevant to the purpose of granting immunity to the governmental agency whose employees act in discretionary capacities." Id. (internal citations omitted).

> Immunity is reserved for those <u>basic policy decisions</u> which have been expressly committed to coordinate branches of government, and as to which judicial interference would thus be "unseemly." Such areas of quasi-legislative policy-making are <u>sufficiently sensitive</u> to call for judicial abstention from interference that might even in the first instance affect the coordinate body's decision-making process.

Barner v. Leeds, 24 Cal. 4th 676, 685 (2000) (emphasis added). "Immunity applies only to *deliberate and considered* policy decisions in which a conscious balancing of risks and advantages took place." Caldwell v. Montoya, 10 Cal. 4th 972, 981 (1995) (internal quotation omitted). As such, the California Supreme Court has drawn a distinction "between the 'planning' and 'operational' levels of decision-making." Johnson v. State, 69 Cal. 2d 782, 795 (1968).

The California Supreme Court has also noted that in order for § 820.2 immunity to apply, a decision by the public employee need not be "a *strictly careful, thorough, formal, or correct* evaluation." Caldwell, 10 Cal. 4th at 983 ("[C]laims of improper evaluation cannot divest a discretionary policy decision of its immunity."). The Caldwell court reasoned that "[s]uch a standard would swallow an immunity designed to protect against claims of

16

carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy." Id. at 983-84.

A fair reading of the complaint reveals allegations that the individual defendants made actual, conscious, and considered collective policy decision. See id. at 984. Plaintiffs allege that "each of the individual defendants has authority over the athletic programs at UC Davis and has participated in or is otherwise responsible for the discriminatory actions and decisions" set forth in the complaint. (Compl. ¶ 17). As such, plaintiffs have alleged that the conduct was within the scope of the individual defendants' duties. Plaintiffs also allege that defendants *intentionally* discriminated against female students and that "[e]ach individual defendant had knowledge of, participated in or otherwise had authority over[,] and approved the discriminatory decisions made and actions taken that discriminate against plaintiffs. (Compl. ¶¶ 38, 57). These allegation reveals that the individual defendants' made actual, conscious decisions with knowledge of the alleged discriminatory purpose or effect.

Moreover, plaintiffs' allegations demonstrate that the alleged discriminatory decisions made by the individual defendants were policy decisions. Plaintiffs allege that "defendants determine the number of athletic opportunities available to male and female students by choosing which sports to offer each sex and by choosing how many athletes they will allow to participate on each sport team." (Compl. ¶¶ 37; 65). Defendants also decide how much athletic financial assistance to provide to students. (Compl. ¶ 65). Plaintiffs contend that

17

1  defendants intentionally discriminated against females students
2  at UCD by choosing to make fewer athletic opportunities available
3  to female students and by offering less financial assistance to
4  female students.  (Compl. ¶¶ 38, 66).  As such, the allegations
5  in the complaint allege that defendants' conduct resulted in a
6  wide-spread effect to all current and prospective female students
7  at UCD.  The gravamen of plaintiffs' claims is that defendants
8  have the authority to provide equal access to athletic
9  opportunities to women at UCD and knowingly choose not to do so.
10 As such, it is clear from the face of the complaint that the
11 alleged decisions made by defendants are "sensitive" issues with
12 "fundamental policy implications."  Caldwell, 10 Cal. 4th at 983.
13      Plaintiffs contend that the court cannot find that § 820.2
14 immunity applies to the individual defendants at the pleading
15 stage because the allegations in the complaint do not reveal that
16 defendants' decisions were basic policy decisions entitled to
17 immunity as opposed to operational decisions, which are not
18 entitled to immunity.  As set forth above, plaintiff's complaint
19 alleges that defendants made basic policy decisions regarding
20 what athletic opportunities to provide to males and females as
21 well as what financial assistance to provide to female athletes.
22      Moreover, the Supreme Court of California has upheld a
23 court's determination regarding the applicability of § 820.2
24 immunity at the pleadings stages.  Caldwell, 10 Cal. 4th at 983.
25 In Caldwell, the court upheld defendants' demurrer based upon
26 discretionary immunity where board members allegedly voted to
27 replace the superintendent based upon improper motives of race
28 and age.  Id. at 976.  The court held that the complaint need not

disclose a "strictly careful, thorough, formal, or correct evaluation." Id. at 983. Rather, the court found that the application of § 820.2 immunity could be decided at the pleading stage where "a fair reading of the complaint" demonstrate that the defendant's conduct "involved an *actual* exercise of discretion." Id. In this case, as set forth above, plaintiffs' allegations demonstrate that the conduct by defendants constituted "actual, conscious, and considered" collective policy decisions. Id. at 984.

Therefore, because a fair reading of plaintiffs' complaint reveals allegations that the individual defendants made actual, conscious, and considered collective policy decisions, the individual defendants are entitled to immunity pursuant to 820.2. Thus, defendants' motion to dismiss plaintiffs' state law claims[9] is GRANTED.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part.

(1) Defendant UCD's motion to dismiss plaintiffs' claim for relief under Title IX based upon a theory of ineffective accommodation is DENIED.

---

[9] The Supreme Court has explicitly found that § 820.2 provides immunity against a public policy tort. Caldwell, 10 Cal. 4th at 984. Moreover, § 820.2 immunity will only fail to apply to basic policy decision where there is a "clear indication of legislative intent that statutory immunity is withheld or withdrawn" in a particular case. The court has found nothing in the Unruh Civil Rights Act which clearly evinces such an intent. See id. at 987-88 (finding that FEHA did not carve out an exception to immunity through the phrase "[e]xcept as otherwise provided by statute").

19

(2) Defendant UCD's motion to dismiss plaintiffs' claim for relief under Title IX based upon a theory of unequal financial assistance is DENIED as MOOT.

(3) Defendant UCD's motion to dismiss plaintiffs' claims for punitive damages under Title IX is GRANTED.

(4) Defendants' motion to dismiss plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 is GRANTED.

(5) Defendants' motion to dismiss plaintiffs' state law claims is GRANTED.

IT IS SO ORDERED.

DATED: December 12, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE