UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

KELSEY BRUST; JESSICA BULALA; LAURA LUDWIG; and all those similarly situated,

        Plaintiffs,

   v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA; LARRY VANDERHOEF; and GREG WARZECKA,,

        Defendants.

NO. CIV. 2-07-1488-FCD-EFB

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on plaintiffs' Kelsey Brust ("Brust"), Jessica Bulala ("Bulala"), and Laura Ludwig's ("Ludwig") (collectively, "plaintiffs") motion for class certification pursuant to Federal Rule of Civil Procedure 23.[1]

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. Local Rule 78-230(h). The extensive briefing and documentary evidence and affidavits filed by the parties renders an evidentiary hearing unnecessary because the court is able to probe behind the pleadings without additional evidence or argument. See Communities for Equity v. Mich. High Sch. Athletic Ass'n, 192 F.R.D. 568, 571 (W.D. Mich. 1999); cf. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982) (noting that "it may be necessary for the court to probe behind the pleadings before

1

1 Defendant Regents of the University of California ("UCD" or
2 "defendant") oppose the motion. For the reasons set forth below,
3 plaintiffs' motion for class certification is GRANTED.

**BACKGROUND**

Plaintiffs Brust, Bulala, and Ludwig are female students at the University of California at Davis ("UCD"). (Decl. of Kelsey Brust in Supp. of Pls.' Mot. for Class Certification ("Brust Decl."), filed Aug. 14, 2008, ¶ 1; Decl. of Jessica Bulala in Supp. of Pls.' Mot. for Class Certification ("Bulala Decl."), filed Aug. 14, 2008, ¶ 1; Decl. of Laura Ludwig in Supp. of Pls.' Mot. for Class Certification ("Ludwig Decl."), filed Aug. 14, 2008, ¶ 1). Each named plaintiff participated in high school athletics and asserts that she is interested in and has the ability to participate in college varsity athletics. (Brust Decl. ¶¶ 3-8; Bulala Decl. ¶¶ 2-5; Ludwig Decl. ¶¶ 2-7).

Plaintiff Brust began playing field hockey while in junior high and continued to play for all four years of high school. (Brust Decl. ¶ 3.) Brust played defense on the varsity team for her sophomore, junior, and senior years and was the team captain her senior year when the team won the Division II Field Hockey championships. (Id.) She currently plays field hockey at the club level at UCD, which has finished in the first or second slot in the Western Collegiate Field Hockey Conference for a number of years. (Id. ¶ 4.) Brust asserts that the UCD women's field hockey team has sought varsity status on several occasions. (Id. ¶ 7.) On or about July 2008, women's field hockey was added as

---

coming to rest on the certification question").

2

an intercollegiate sport. (Am. Decl. of Greg Warzecka in Supp. of Def.'s Opp'n to Pls.' Mot. for Class Certification ("Warzecka Decl."), filed Sept. 11, 2008, ¶ 3). Competition in that sport is scheduled to start in the fall of 2009. (Id.)

Plaintiff Bulala began playing field hockey competitively in the sixth grade. (Bulala Decl. ¶ 2). She competed at the varsity level in high school for all four years. (Id.) Her teams tied at the state championships her freshman year, won the county title her sophomore year, won the county and regional titled her junior year, and won the county, regional, and state championships her senior year. (Id.) She currently plays field hockey at the club level at UCD. (Id. ¶ 3.)

Plaintiff Ludwig has played competitive sports for many years. (Ludwig Decl. ¶ 2.) She wrestled in high school for three and a half years at the junior varsity and varsity levels. (Id.) She placed in the top ten in the national United States Girls Wrestling Association in her junior and senior years and was named an All American during her senior year in the USA Wrestling Magazine. (Id.) During her freshman year at UCD, Ludwig was interested in participating on the varsity wrestling team, but was directed to the wrestling club team by the coach. (Id. ¶ 3.) Ludwig asserts that there were few competitive opportunities on the club team because it was unorganized and lacked a paid coach. (Id.) During her sophomore year, Ludwig played rugby at the club level. (Id. ¶ 4.) However, during the pre-season of her junior year, she was injured and unable to participate during her junior and senior year. (Id.) Ludwig asserts that because she was a club team member, she did not have

3

1  access to the same medical treatment that a varsity player would
2  receive, and that, if she had such access, she would have
3  continued to play.  (Id. ¶ 6.)  Ludwig also asserts that the
4  Davis Women's Rugby Club submitted an application in 2007 for
5  varsity status but was not selected.  (Id. ¶ 8.)

6      As club sport team members, plaintiffs must make a financial
7  commitment to play by paying dues, and club teams must raise
8  their own funds for travel, uniforms, coaches, and equipment.
9  (Brust Decl. ¶ 5; Bulala Decl. ¶ 4; Ludwig Decl. ¶ 5.)  It is
10 plaintiffs' understanding that elevation of club teams to varsity
11 status brings with it benefits, including (1) paid coaches; (2)
12 paid equipment and uniforms; (3) access to health benefits and
13 athletic training; (4) access to tutoring and other academic
14 assistance; (5) facility and field priority; and (6)
15 administrative and financial assistance.  (Brust Decl. ¶ 6;
16 Bulala Decl. ¶ 5; Ludwig Decl. ¶ 7.)  While plaintiffs Brust and
17 Bulala believe that field hockey is a strong candidate for
18 varsity status and plaintiff Ludwig believes that rugby is a
19 strong candidate for varsity status, all plaintiffs assert that
20 they are participating in this litigation in order to obtain more
21 varsity athletic opportunities for all female athletes at UCD.
22 (Brust Decl. ¶ 8; Bulala Decl. ¶ 7; Ludwig Decl. ¶ 8.)

23     Plaintiffs request certification of the following proposed
24 class:

25     All current, prospective, and future women students at
    the University of California at Davis who seek to
26     participate in and/or who are deterred from
    participating in intercollegiate athletics at UCD.
27
28 (Pls.' Mot. for Class Certification [Docket #53], filed Aug. 14,

4

1  2008, at 5).  On behalf of the class and themselves, named
2  plaintiffs seek declaratory, injunctive, and monetary relief and
3  the other judicial remedies available to them to ensure UCD's
4  compliance with Title IX, including: (1) a declaration that UCD
5  has violated and continues to violate Title IX; and (2) an
6  injunction: (a) restraining defendant from engaging in sex
7  discrimination in the administration of UCD athletic programs;
8  (b) requiring defendant to increase varsity athletic
9  participation opportunities for female students at UCD and to
10 provide all corresponding benefits of varsity status; and (c)
11 requiring defendant to increase athletic financial assistance for
12 female athletes.  (Compl., filed July 24, 2007, ¶ 4.)

**STANDARD**

14    District courts have broad discretion in ruling on motions
15 for class certification because "the district court is in the
16 best position to consider the most fair and efficient procedure
17 for conducting any given litigation."  Doninger v. Pacific
18 Northwest Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977).
19 However, before certifying a class, the court must "conduct a
20 'rigorous analysis' to determine whether the party seeking
21 certification has met the prerequisites of Rule 23" of the
22 Federal Rules of Civil Procedure.  Zinser v. Accufix Research
23 Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001) (citing
24 Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1233 (9th Cir.
25 1996)).  "The 'rigorous analysis requirement' means that a class
26 is not maintainable merely because the complaint parrots the
27 legal requirements of Rule 23."  Communities for Equity, 192
28 F.R.D. 568, 570 (citing In re Am. Med. Sys., Inc., 75 F.3d 1069,

1079 (6th Cir. 1996)).

Under Rule 23(a), there are four threshold requirements applicable to all class actions: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact common to the class; (3) the claims and defenses of the representative party are typical of the claims and defenses of the class; and (4) the representative party will fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(a).

An action may be maintained as a class action where the above prerequisites are met and one of the conditions enumerated in Rule 23(b) is satisfied.  Plaintiffs move for certification under Rule 23(b)(2).  Certification under Rule 23(b)(2) is proper where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

The burden is on the party seeking to maintain the action as a class action to establish a prima facie showing of each of the 23(a) prerequisites and the appropriate 23(b) ground for a class action.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019, 1022 (9th Cir. 1998); Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985).

/////
/////
/////
/////

6

## ANALYSIS[2]

**A.   Rule 23(a)(1): Numerosity**

The initial inquiry under Rule 23(a) is whether the class is sufficiently numerous that joinder of all members individually is "impracticable."  Fed. R. Civ. P. 23(a)(1); see Communities for Equity, 192 F.R.D. at 571 ("Numbers alone are not dispositive when the numbers are small, but will dictate impracticability when the numbers are large.").  "The requirement does not demand that joinder would be impossible, but rather that joinder would be extremely difficult or inconvenient."  5 Moore's Federal Practice § 23.22[1] (3d Ed. 2003).

The numerosity requirement imposes no absolute numerical limitation, but, rather, requires that the specific facts of each case be examined.  General Tel. Co. v. E.E.O.C., 446 U.S. 318, 330 (1980).  "Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion."  Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986) (upholding class certification where plaintiff identified thirty one individual class members and the class

---

[2]  The court notes that both plaintiffs and defendant devote a disproportionate amount of their briefs to a discussion of the merits of their underlying claims and defenses that is irrelevant to the requirements of Rule 23.  As this is before the court on a motion for class certification, the court does not address the merits of these irrelevant issues or make any binding conclusions with respect to any claims or defense.  See Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 178 (1974) (noting that nothing in the language of Rule 23 gives the court authority to conduct a preliminary inquiry into the merits of a suit on a motion for class certification).

1  included future and deterred job applicants who were necessarily
2  unidentifiable).  Where the class is comprised of more than forty
3  individuals, numerosity is generally satisfied.  <u>Cox v. Am. Cast</u>
4  <u>Iron Pipe Co.</u>, 784 F.2d 1546, 1553 (11th Cir. 1986); <u>see also</u>
5  <u>Leyva v. Buley</u>, 125 F.R.D. 512, 515 (E.D. Wash. 1989) (holding
6  that class consisting of 50 individuals met numerosity
7  requirement).  If class members are unknown or unidentifiable,
8  then joinder of all class members is likely impracticable.  <u>See</u>
9  <u>Jordan v. Los Angeles County</u>, 669 F.2d 1311, 1319-20 (9th Cir.
10 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (holding
11 that the numerosity requirement was met because "[t]he joinder of
12 unknown individuals is inherently impracticable"); <u>see also</u> 5
13 Moore's Federal Practice § 23.22[3] (3d Ed. Supp. 2008) ("It is
14 well established . . . that the party seeking class certification
15 need not be able to prove the exact number of members of the
16 proposed class or to identify each class member.").

17     Further, where declaratory or injunctive relief is sought,
18 the numerosity requirement may be relaxed "so that even
19 speculative or conclusory allegations regarding numerosity are
20 sufficient to permit class certification."  5 Moore's Federal
21 Practice § 23.22[3][b] (3d Ed. Supp. 2008); <u>see also</u> <u>Goodnight v.</u>
22 <u>Shalala</u>, 837 F. Supp. 1564, 1582 (D. Utah 1994).

23     In support of their motion for class certification,
24 plaintiffs present evidence that there are over 600 women playing
25 club sports at UCD and several thousand that participate in
26 intramural sports at UCD.  (<u>See</u> Pl.'s Ex. A:21, A:23.)
27 Plaintiffs also present evidence that there are more than six
28 thousand girls in California who participate in high school

8

athletic teams that do not have varsity status at UCD.  (See Pl.'s Ex. A:28.)  Defendant asserts that this evidence is insufficient because it does not demonstrate that those women are necessarily interested in participating in varsity athletics at UCD.  However, defendant's own evidence demonstrates that there is a high level of interest in competition at the intercollegiate level by female students.  In a 2004 survey of female freshman interest in athletics (2,426 female freshman), the "best estimate" revealed that 212 female students[3] were interested in participating at the varsity level in sports that were not offered by UCD.  (Def.'s Ex. P, at MAN6168.)  In a similar 2005 survey, the "best estimate" revealed that 312 female students were interested in participating at the varsity level in sports that were not offered by UCD.  (Def.'s Ex. Q, at MAN6933.)  In a 2007 survey of female undergraduate interest in athletics (12,431 females), the "best estimate" revealed that 561 female students were interested in participating at the varsity level in sports that were not offered by UCD.  (Def.'s Ex. R, at 13.)  As such, this evidence sufficiently demonstrates that the proposed class meets the numerosity requirement.

Defendant also asserts that the numerosity requirement is not met because plaintiffs' proffered evidence does not include information regarding how many girls who are interested in playing at the intercollegiate level meet the minimum academic

---

[3] The court notes that respondents to the surveys were able to mark their interest in more than one sport and level of participation. Therefore, of the responses, some may have been by the same student. However, the court finds that these surveys are sufficient to demonstrate interest among a large number of female freshman students.

9

requirements for admission at UCD or to participate in intercollegiate athletics at UCD once admitted. Defendant's argument demonstrates the impracticability of joinder in this case. There are thousands of female athletes that participate in high school athletics in sports that are not offered at the varsity level at UCD. The identity of those prospective and future students who are qualified for admission and are deterred from participating in intercollegiate athletics at UCD because of it's alleged discriminatory policies is not readily ascertainable, if not impossible to discern, and thus, it is inherently impracticable to join them as parties. See Jordan, 669 F.2d at 1319-20; see also Roman v. Korson, 152 F.R.D. 101, 111 (W.D. Mich. 1993) (holding that inclusion of future class members was warranted in light of the suggestion of future violations and would avoid unnecessary harm and repetitive litigation).

Plaintiffs have presented sufficient evidence to demonstrate that the proposed class is composed of a large number of current women students at UCD who are interested in participating in varsity athletics as well as a significant number of prospective and future women students who are not easily identified. Joinder of all these parties would be impracticable. Accordingly, the numerosity requirement is fulfilled.[4]

/////
/////

---

[4] The court also notes that injunctive and declaratory relief is the crux of plaintiffs' requested relief in this litigation. As such, the numerosity requirement is less stringent.

10

**B.   Rule 23(a)(2): Commonality**

The next inquiry under Rule 23(a) is whether there exist "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The fact that there is some factual variation among the class grievances will not defeat a class action . . . . A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Rosario v. Livaditis, 963 F.2d 1013, 1017-18 (7th Cir. 1992). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon Corp., 150 F.3d at 1019. "[A] proposed class can consist of members with widely differing experiences as they relate to a common case but seek a common remedy for a common policy of discrimination." Parra v. Bashas', Inc., 536 F.3d 975, 978 (9th Cir. 2008); Communities for Equity, 192 F.R.D. at 572 ("In cases involving the question of whether a defendant has acted through an illegal policy or procedure, commonality is readily shown because the common question becomes whether the defendant in fact acted through the illegal policy or procedure.").

In this case, the central question is "whether UCD discriminates against women in its varsity athletics program by failing to provide equal athletic opportunities in violation of Title IX." (Pl.'s Mot. for Class Certification, filed Aug. 14, 2008, at 9.) Questions of law and fact that are common to the class may include, among others: (1) whether female varsity athletic opportunities are disproportionately few in relation to

11

the level of female enrollment at UCD; (2) whether women's varsity athletic opportunities are disproportionately few in relation to the level of men's athletic varsity opportunities; (3) whether UCD has failed to expand female varsity opportunities for students at a rate and in a manner that is responsive to developing interests on campus; (4) whether defendant has violated Title IX in its allocation of varsity sports opportunities; and (5) whether plaintiffs are entitled to injunctive relief requiring defendant to create more varsity opportunities for female students at UCD. (Id. at 10.); see Communities for Equity, 192 F.R.D. at 572 (holding that commonality was established where the overarching question was whether the defendant violated Title IX).[5]  Accordingly, the commonality requirement is satisfied.

**C.   Rule 23(a)(3): Typicality**

Next, Rule 23(a) requires that the "claims or defenses of the class representative must be typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "The

---

[5] Defendant does not specifically argue that the commonality requirement is not met, but rather, argues that the asserted conflict among the class precludes certification. The court notes that these arguments are better addressed in the discussion of the typicality and/or adequacy of representation inquiries.

12

purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Id. While this requirement seemingly merges with the commonality requirement, the inquiry under typicality focuses on potential conflict[6] between the interests of the class representatives and the interests of the absent class members that would preclude certification. See Falcon, 457 U.S. at 157 n.3 (noting that typicality tends to merge with both commonality and adequacy of representation because it serves as a guidepost for determining "whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately represented in their absence").

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Hanon, 976 F.2d at 508 (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990)). The unique defense inquiry goes to the existence of a defense, not to its validity; the party opposing certification must show some degree of likelihood that the unique defense will play a significant role at trial. 5 Moore's Federal Practice § 23.24[6][a] (3d Ed. Supp. 2008). However, a defense that has no

---

[6] The inquiry into potential also implicates the requirement under Rule 23(a)(4) and under constitutional due process standards that "absent class members must be afforded adequate representation before entry of a judgment which binds them." Hanlon, 150 F.3d at 1020 (citing Hansberry v. Lee, 311 U.S. 32, 42-43 (1940)).

13

1  merit will not preclude certification.  Id.; see Hanon, 976 F.2d
2  at 509 (noting that the court is "at liberty to consider evidence
3  which goes to the requirements of Rule 23 even though the
4  evidence may also relate to the underlying merits of the case").

5      As set forth above, plaintiffs have demonstrated that the
6  claims of the named plaintiffs as well as the proposed class
7  arise out of the systemic denial of varsity athletic
8  opportunities and accompanying benefits due to defendant's
9  alleged discriminatory policies.  All plaintiffs' claims are
10 based upon the common legal issues of whether defendant's system-
11 wide programs, policies, and practices violate Title IX.  All
12 plaintiffs' injuries arise from the denial of equal athletic
13 participation opportunities to women students at UCD.

14     Defendant contends that plaintiffs Brust and Bulala's claims
15 are not typical of the class because they are subject to the
16 unique defense of mootness.  Defendant asserts that because field
17 hockey is in the process of being established as a varsity sport
18 at UCD, claims relating to field hockey are no longer actionable.

19     While the court does not reach a conclusion with respect to
20 the merits of defendant's asserted defense, it holds that the
21 relative strength of the argument demonstrates that the mootness
22 defense will not play a significant role at trial such that it
23 precludes certification.  See Riordan v. Smith Barney, 113 F.R.D.
24 60, 63 (N.D. Cal. 1986) ("[I]t is only when a unique defense will
25 consume the merits of a case that a class should not be
26 certified.").  First, defendant's argument relies on a
27 mischaracterization of plaintiffs' claims.  Brust and Bulala's
28 claim is not based upon UCD's failure to add a field hockey team,

14

but rather, the alleged failure to provide equal athletic opportunities to interested female athletes.  The lack of a varsity field hockey team when there was sufficient interest is only one alleged result of this systemic discrimination.  Moreover, plaintiffs' requested injunctive relief is that UCD increase varsity athletic participation opportunities for female students at UCD, not the addition of a field hockey team or any particular varsity athletic team.  Second, at present, there is no active varsity field hockey team at UCD.  Finally, issues relating to voluntary cessation and broader public goals raise serious questions as to the applicability of the defense.  Under these circumstances, the court does not conclude that the mootness defense defeats typicality.

Defendant also contends that there is a conflict between named plaintiffs' interests in establishing varsity teams of their liking and the interest in absent members of the class who would prefer the establishment of other varsity teams.  Again, defendant's argument relies on the mischaracterization that named plaintiffs seek the establishment of particular varsity teams at UCD as opposed to an increase in varsity athletic opportunities generally.  Further, "[t]o the extent that the underlying issue in the case is one of unequal treatment and discrimination, the matter of whether to sanction a particular sport appears to be one relating to relief, rather than liability."  Communities for Equity, 192 F.R.D. at 574.

The court is mindful that a conflict could arise at the remedy stage, if any, of the litigation due to the limited availability of resources and the choice between what teams may

15

be selected for varsity status.[7] Boucher v. Syracuse Univ., 164 F.3d 113, 199 (2d Cir. 1998). This conflict may be resolved by the creation of subclasses. Id. However, because the liability determination in this case is particularly well-suited to class treatment, the court believes that the appropriate course is "to defer consideration of any subclasses to the relief stage, if any, of this litigation." Communities for Equity, 192 F.R.D. at 574 (citing H. Newberg and A. Conte, 1 Newberg on Class Actions, § 3.25 (3d ed. 1992) ("Potential conflicts relating to relief issues which would arise only if the plaintiffs succeed on common claims of liability on behalf of the class will not bar a finding of adequacy and may be resolved, when the need arises, by the formation of subclasses at the relief stage.").

Accordingly, the typicality requirement is satisfied.

**D.   Rule 23(a)(4): Adequacy of Representation**

The final prerequisite under Rule 23(a) is that the person representing the class must be able "fairly and adequately to protect the interests" of all members in the class. Fed. R. Civ. P. 23(a)(4). This element requires: "(1) that the proposed representative [p]laintiffs do not have conflicts of interest with the proposed class, and (2) that [p]laintiffs are represented by qualified and competent counsel." Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1185 (9th Cir. 2007).

Defendant's objections to the adequacy of representation are based primarily upon the same alleged conflicts discussed under

---

[7] However, the court notes that if plaintiffs prevail, relief is not necessarily based upon an injunction requiring the establishment of specific varsity teams for women.

the typicality requirement.[8]  As set forth above, the court finds that there is no conflict of interest arising out of the proposed addition of field hockey as a varsity sport and that any potential conflict with respect to the remedies may be cured at a later stage in the litigation through appropriate subclasses.

Defendant also argues that there is inherent conflict in the class because some women are not interested in playing varsity sports and do not want to be a member of the class. Specifically, defendant references the declarations of two female UCD students who participate in club sports or intramural sports, have no desire to compete at the intercollegiate level and do not want to be parties to the lawsuit.  (Decl. of Rebecca Kwong, Def.'s Ex. Z; Decl. of Amy Cole, Def.'s Ex. AA.)  As an initial matter, the proposed class purports only to represent those women who seek to participate in and/or who are deterred from participating in intercollegiate athletics at UCD.  To the extent that some female students do not seek to participate in intercollegiate athletics, they are not part of the proposed class.  Further, "[i]t is not 'fatal if some members of the class prefer not to have violations of their rights remedied.'" Lanner v. Wimmer, 662 F.2d 1349, 1357 (10th Cir. 1981); see Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson, 102 F.R.D. 457, 464 (N.D. Cal. 1983) (holding that some class members' belief that the defendants' conduct was not objectionable did not defeat class certification; see also 5 Moore's Federal Practice § 23.25[2][6][iii] (3d Ed. Supp. 2008)

---

[8] Defendant addressed commonality, typicality, and adequacy of representation simultaneously in its opposition.

17

1  ("[A] court will not refuse to certify a class solely because
2  some of the class members prefer to leave their rights
3  unremedied."); H. Newberg and A. Conte, 1 Newberg on Class
4  Actions, § 3:30 (4th ed. 2008) ("[T]he class member who wishes to
5  remain a victim of unlawful conduct does not have a legally
6  cognizable conflict with the class representative.").[9]

7  With respect to the appointment of class counsel, defendant
8  does not contest the qualifications of the Sturdevant Law Firm
9  and Equal Rights Advocates to serve as class counsel. (Def.'s
10 Opp'n to Pls.' Mot. for Class Certification, filed Sept. 10,
11 2008, at 19.)  However, defendant challenges the appointment of
12 Kristen Galles of Equity Legal on the basis that there is no need
13 to have three law firms assigned as class counsel and it will
14 contribute to the needless inflation of attorneys' fees.  The
15 court disagrees.  Ms. Galles has significant Title IX class
16 counsel experience.  (Pl.'s Ex. D.)  To the extent that
17 plaintiffs' attorneys fees become an issue for defendant in this
18 litigation, the court can determine whether duplicative work has
19 been performed by counsel.

20 Accordingly, representation is adequate.

21 **E.  Rule 23(b)(2): Injunctive or Declaratory Relief**

22 Under Rule 23(b)(2), class certification may be appropriate
23 where a defendant acted or refused to act in a manner applicable
24 to the class generally, rendering injunctive relief or
25 declaratory relief appropriate to the class as a whole.  Fed. R.

---

[9] Moreover, "the interests of those class members who do not consider themselves adversely affected will be adequately represented by defendant." Communities for Equity, 192 F.R.D. at 574.

1  Civ. P. 23(b)(2); see Molski v. Gleich, 318 F.3d 937, 950 (9th
2  Cir. 2003).  Rule 23(b)(2) generally does not extend to cases in
3  which the appropriate final relief relates primarily to money
4  damages.  See Arnold v. United Artists Theatre Circuit, Inc., 158
5  F.R.D. 439, 450-51 (N.D. Cal. 1994).  However, "[c]lass actions
6  certified under Rule 23(b)(2) are not limited to actions
7  requesting injunctive and declaratory relief, but may include
8  cases that also seek monetary damages."  Probe v. State Teachers'
9  Retirement Sys., 780 F.2d 776, 780 (9th Cir. 1986).

10      In this case, plaintiffs allege that defendant UCD acted in
11 a manner applicable to the class generally by failing to offer
12 equal intercollegiate athletic opportunities to women students at
13 UCD.  Plaintiffs predominately seek declaratory and injunctive
14 relief requiring UCD to come into compliance with Title IX; such
15 relief would apply to and benefit the class as a whole.
16 Accordingly, certification under Rule 23(b)(2) on the issues of
17 liability, declaratory relief and injunctive relief is
18 appropriate.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for class certification is GRANTED.  The court certifies the following class:

> All present, prospective, and future women students at the University of California at Davis who seek to participate in and/or who are deterred from participating in intercollegiate athletics at the University of California at Davis.

The court appoints Kelsey Brust, Laura Ludwig, and Jessica Bulala as class representatives.  The court appoints Equal Rights
/////

19

Advocates, The Sturdevant Law Firm, and Equity Legal as class counsel.

    IT IS SO ORDERED.

DATED: October 23, 2008

                              FRANK C. DAMRELL, JR.
                              UNITED STATES DISTRICT JUDGE