James C. Sturdevant, State Bar No. 94551
(jsturdevant@sturdevantlaw.com)
Monique Olivier, State Bar No. 190385
(molivier@sturdevantlaw.com)
Whitney Huston, State Bar No. 234863
(whuston@sturdevantlaw.com)
THE STURDEVANT LAW FIRM
A Professional Corporation
354 Pine Street, Fourth Floor
San Francisco, CA  94104
Telephone: (415) 477-2410
Facsimile: (415) 477-2420

Debra Smith, State Bar No. 147863
(dsmith@equalrights.org)
Noreen Farrell, State Bar No. 191600
(nfarrell@equalrights.org)
Lisa Leebove, State Bar No. 186705
(lleebove@equalrights.org)
EQUAL RIGHTS ADVOCATES
1663 Mission Street, Suite 250
San Francisco, CA  94103
Telephone: (415) 621-0672
Facsimile: (415) 621-6744

Kristen Galles, State Bar No. 148740
(kgalles@comcast.net)
EQUITY LEGAL
10 Rosecrest Avenue
Alexandria, VA  22301
Telephone: (703) 683-4491

Attorneys for Plaintiffs

PORTER SCOTT
A Professional Corporation
Nancy J. Sheehan, State Bar No. 109419
(nsheehan@porterscott.com)
350 University Avenue, Suite 200
Sacramento, California 95825
Telephone: (916) 929-1481
Facsimile: (916) 927-3706

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KELSEY BRUST, et al.,** | **CASE NO. 2:07-CV-01488-FCD-EFB** |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **STIPULATED JUDGMENT AND ORDER** |
| **REGENTS OF THE UNIVERSITY OF CALIFORNIA,** | |
| Defendant. | |

This Stipulated Judgment is entered into by and between plaintiffs Kelsey Brust ("**Brust**"), Jessica Bulala ("**Bulala**"), and Laura Ludwig ("**Ludwig"**) (collectively, "**Plaintiffs**"), individually and as representatives of the Class (as defined below), on the one hand, and The Regents of the University of California ("**Regents**" or "**Defendant**"), on the other, for conduct relating to the University of California at Davis ("**UCD**").

## I.   INTRODUCTION

**A.**   On July 24, 2007, Plaintiffs filed a proposed class action complaint against Defendant Regents, and individual defendants UCD Chancellor Larry Vanderhoef and UCD Athletic Director Greg Warzecka (collectively "**Defendants**") in the United States District Court for the Eastern District of California, alleging violations of:  (1) the Equal Athletic Participation Opportunity requirements of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq*.) ("Title IX"); (2) the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983 ("§ 1983"); (3) the Unruh Civil Rights Act of California state law (Cal. Civ. Code § 51 *et seq*.); and (4) California public policy ("**the Action**")**.**

**B.**   On October 26, 2007, Defendants moved to dismiss the Action pursuant to Federal Rules of Civil Procedure, rule 12(b)(6).  On December 12, 2007, the Court granted Defendants' motion in part, dismissing Plaintiffs' § 1983 claim and their state law claims, and dismissing individual defendants Vanderhoef and Warzecka.

**C.**   On August 14, 2008, Plaintiffs filed a Motion for Class Certification.  On October 24, 2008, the Court entered an Order certifying the following class ("the Class"):

> All present, prospective, and future women students at the University of California at Davis who seek to participate in and/or who are deterred from participating in intercollegiate athletics at the University of California at Davis.

Plaintiffs were appointed class representatives and Plaintiffs' Counsel was appointed as Class Counsel.

**D.**   The lawsuit has been vigorously prosecuted and defended and has included significant discovery and motion practice.

**E.**   On January 30th, and again on February 25th 2009, the Parties held two mediation

1

sessions conducted by Michael Dickstein of Dickstein Dispute Resolution.  Following these two mediations sessions, the parties had numerous additional conversations and negotiations regarding settlement, which were also conducted by Michael Dickstein.  At the conclusion of these sessions and conversations, the Parties agreed to settle this Action.

**F.** Plaintiffs and Plaintiffs' Counsel (as defined below) have agreed to settle this Action, pursuant to the provisions of this Stipulated Judgment, considering, among other things:  (1) the substantial benefits available to Plaintiffs and the Class under the terms of this Stipulated Judgment; (2) the attendant risks and uncertainties of litigation, especially in complex litigation such as this Action as well as the difficulties and delays inherent in such litigation; and (3) the desirability of consummating this Stipulated Judgment promptly to provide effective relief to the Class.

**G.** The fact that the Regents has entered into this Stipulated Judgment is not an admission of liability or an admission that it is not or has not been in compliance with Title IX.  The terms of the settlement apply only to the University of California at Davis and should not be used as precedent for Defendant's other schools or campuses.

**H.** This matter involves contested issues of fact and liability and there has been no adjudication by the Court of the claims asserted, nor finding of fact made.  The Stipulated Judgment is entered into solely for the purpose of allowing the Court to maintain jurisdiction over the case for the time periods specified herein.

**I.** The Parties make the promises contained in this Stipulated Judgment for good and valuable consideration, the adequacy of which is hereby acknowledged.

**II.    DEFINITIONS**

**A.** As used in this Stipulated Judgment and the attached Exhibits, which are an integral part of the Stipulated Judgment and are incorporated in their entirety by reference, the following terms have the meanings specified below:

   **1.** "**Action**" means *Kelsey Brust, et al. v. Regents of the University of California, et al.,* Case No. 2:07-CV-01488-FCD-EFB (E.D. Cal.).

   **2.** "**Class**" means:  All present, prospective, and future women students at the

1  University of California at Davis who seek to participate in and/or who are deterred from participating in
2  intercollegiate athletics at the University of California at Davis during the Compliance Period.

3        **3.**  "**Class Counsel**" or "**Plaintiffs' Counsel**" means Equal Rights Advocates, The
4  Sturdevant Law Firm, and Equity Legal.

5        **4.**  "**Class Member**" means a person who falls within the Class (as defined above).

6        **5.**  "**Notice**" means the notice provided to the Class, the proposed form of which is
7  attached hereto as Exhibit A.

8        **6.**  "**Compliance Period**" means the period from the Effective Date of this Stipulated
9  Judgment until the termination of this Stipulated Judgment at the end of the 2019-2020 academic year.

10        **7.**  "**Defendant**" means The Regents of the University of California ("Regents" or
11  "Defendant").

12        **8.**  "**Defendant's Counsel**" means Porter Scott, PC.

13        **9.**  "**Enrollment Numbers**" means the total number of full-time undergraduate
14  students enrolled at the University of California at Davis, broken down by gender.

15        **10.**  "**Effective Date**" means the date when each and all of the following conditions
16  have occurred:

17        a.  This Stipulated Judgment has been signed by Plaintiffs, Defendant,
18  Plaintiffs' Counsel, Defendant's Counsel;

19        b.  The Court has approved notice to the Class and notice has been issued;

20        c.  The Court has both preliminarily and finally approved the Stipulated
21  Judgment;

22        d.  The Court has entered the Stipulated Judgment and Order.

23        **11.**  "**Equity in Athletics Disclosure Act Report ('EADA Report')**" means the
24  annual report submitted by UCD to the U.S. Department of Education pursuant to its obligations under
25  the Equity in Athletics Disclosure Act of 1994, 20 U.S.C. § 1092.  The EADA Report includes data on
26  enrollment, varsity athletic participation, staffing, and revenues and expenses, broken down by gender.

27        **12.**  "**Female Participation Differential**" means:  The difference between the

28

3

1  percentage of full-time female undergraduate enrollment and the percentage of female intercollegiate
2  participation opportunities, as based on enrollment and participation numbers set forth in the EADA
3  Report issued in the calendar year in question.

4     13.   "**NCAA Division I average squad size**" means the average number of
5  participants on a Division I level squad, broken down by gender, as determined by the statistical
6  information compiled by the NCAA regarding participation in intercollegiate athletics at its member
7  institutions and reported yearly.

8     14.   "**Parties**" means and refers to Plaintiffs and Defendant.

9     15.   "**Selection Process**" means and refers to the process employed by UCD, upon
10 determination that UCD will add a varsity intercollegiate athletic team, to determine which varsity team
11 to add.  The process includes, but is not limited to:  the creation of a Sports Selection Advisory
12 Committee, the distribution and publication of UCD's intent to add a varsity team and the criteria
13 relating to the addition of a varsity team, the review of applications by the Sports Selection Advisory
14 Committee, and the review of the recommendation of the Sports Selection Advisory Committee by the
15 Title IX Advisory Committee.

16    16.   "**Title IX Compliance Officer**" means an employee of UCD who is qualified and
17 appointed to serve as the individual responsible for ensuring compliance with Equal Athletic
18 Participation Opportunity requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. §
19 1681 *et seq*. ("Title IX"), which prohibits sex discrimination in educational institutions receiving federal
20 financial assistance.

21    17.   "**Title IX Compliance Report**" means the annual report prepared by the Chair of
22 the Title IX Advisory Committee and the annual report prepared by the Title IX Compliance Officer
23 regarding the UCD's compliance with Title IX in regard to athletics.

24 **III.   SETTLEMENT RELIEF**
25    **A.   Equitable Relief**
26       The Parties hereby agree that, conditioned upon entry of the Stipulated Judgment and
27 Order by the District Court, Defendant shall do the following:
28

4

**1.     Addition of Women's Varsity Teams**

  a. UCD shall continue implementation of the addition of a women's varsity field hockey team to commence competition in the 2009-2010 academic year.  UCD's support of women's varsity field hockey shall include:

    i UCD shall provide sufficient funding to the women's varsity field hockey team to ensure recruitment, competition, development, and with the understanding that scholarships are phased in under standard UCD practice with respect to all new varsity teams.  UCD shall ensure equitable treatment of the team as required by law.

    ii In May, 2009 UCD provided campus-wide notice of open tryouts for the women's field hockey team (including publication in the campus newspaper, posting at club sports office and distribution of notice to field hockey club team).  As a result of these tryouts and recruitment, a roster for the women's field hockey team has been created and the team is scheduled to start competition in August, 2009.

    iii UCD shall maintain the women's field hockey club team so long as there is continued sufficient student interest.

    iv This Stipulated Judgment does not give the field hockey club team precedential preferential status in regard to funding or other aspects over other club sports.

  b. Any varsity team added pursuant to, or throughout the duration of, this Stipulated Judgment shall receive UCD support set forth under Section III.A.1.a., specific to the team added.

    i The Selection Process for the addition of any future varsity team added pursuant to, or throughout the duration of, this Stipulated Judgment shall include, at least, the following steps:  UCD shall

5

                    notify female undergraduates, including but not limited to those who are participating in club sports, of the opportunity to learn about the Selection Process.

        ii      A student will remain on the Sports Selection Advisory Committee.

        iii     UCD shall advise any individual or team seeking varsity status of the existence of prior applications submitted by that team, if any, for that sport and provide a copy of the prior applications upon request.

        iv     UCD shall provide the criteria to applicants and will follow the provided criteria in selecting a team.

        v      If UCD uses different criteria as the basis for the Selection Process than it is currently using, at any time throughout the duration of this Stipulated Judgment, it shall provide a copy of the changed criteria to Plaintiffs' Counsel.

    2.    **Squad Sizes of Women's Varsity Teams**

        a.    If any UCD women's varsity team has a squad size which is over 15% of the NCAA Division I average squad size (as reported by the NCAA for the previous year from the year in question), UCD's Title IX Compliance Officer shall investigate the size of that team and include his/her conclusions from the investigation in the Title IX Compliance Report. The Title IX Compliance Report should also include the roster sizes/actual number for any team which is over 15% of the NCAA Division I average squad size. The Title IX Compliance Officer may consider alternative squad size models in his/her investigation.

        b.    The coaches of women's teams at UCD will not be required to carry a minimum number of participants on a team, aside from NCAA

requirements.

**3.    Female Participation Differential**

   a.   The Female Participation Differential for the academic year 2009/2010 shall be no more than 3.5%, as reflected in the EADA Report issued in the Fall of 2010.

   b.   The Female Participation Differential for the academic year 2010/2011 shall be no more than 2.5% as reflected in the EADA Report issued in the Fall of 2011.  If UCD does not meet this threshold, it shall decide whether to add a new women's varsity team to compete in academic year 2013/2014, or for the EADA Report issued in the Fall of 2012 to reflect 2.5% Female Participation Differential

   c.   The Female Participation Differential for the academic year 2013/2014 shall be no more than 1.5% as reflected in the EADA Report issued in the Fall of 2014, as long as the percentage of women reflected in the Enrollment Numbers on November 15, 2014 is less than 58%.  If the percentage of undergraduate women enrolled on November 15, 2014 is 58% or higher, then the Female Participation Differential shall be no more than 2.0%.  If UCD does not meet either threshold, it shall decide whether to add a new women's varsity team to compete by academic year 2016-2017, or for the EADA Report issued in the Fall of 2015 to reflect a Female Participation Differential of no more than 1.5% or 2%, depending on which threshold, as described above, applies.

   d.   The Female Participation Differential for the academic year 2016/2017 shall be no more than 1.5% as reflected in the EADA Report issued in the Fall of 2017.  If UCD does not meet this threshold, it shall decide whether to add a new women's varsity team to compete by academic year 2019/2020 or for the EADA Report issued in the Fall of 2018 to reflect

7

                1.5% Female Participation Differential.

    e.    Plaintiffs' purpose in agreeing to the time frames set forth in this section is to maximize the potential to add women's participation opportunities. In the event of any cuts to any men's varsity teams, UCD will not reference this lawsuit, Plaintiffs, or Plaintiffs' Counsel in conjunction with the elimination.

**4.    Fund to Support Athlete Development**

    a.    As part of the settlement of the injunctive relief claim, Defendant shall pay $110,000 as a fund ("Fund") to a non-profit organization to be chosen by Plaintiffs.

    b.    The $110,000 sum shall be paid in care of the chosen non-profit organization within 30 days of the Effective Date.

    c.    The Fund shall be used solely to support club sports at UCD. Subject to that limitation, Plaintiffs shall have the sole discretion to determine how the Fund will be expended. Plaintiffs have exercised that discretion and determined that the Fund will be used for the development of women athletes through the UCD club sports programs.

    d.    Distribution of monies from the Fund shall be pursuant to a process determined by Plaintiffs in conjunction with the non-profit organization.

    e.    To the extent there is any administrative fee or other expense associated with the distribution of the Fund, such fee or expense shall be paid out of the Fund.

    f.    Monies distributed from the Fund are in addition to any monies otherwise allocated to the club sports teams by UCD and may not be used as a basis for denying budget requests or otherwise be determinative of club sports teams budgets.

**5.    Reporting Requirements**

         a.      UCD shall report the following information to Plaintiffs' Counsel on the dates set forth below during the Compliance Period:

             i      UCD's Title IX Compliance Report annually, by September 1st, through the 2019/2020 academic year.

             ii     UCD's full-time Enrollment Numbers as of November 15, 2014, by December 1, 2014.

             iii    UCD will inform Plaintiffs' Counsel of which option it chooses under Sections III.3.b., c. and d. above by January 30th of each year specified by this agreement.

             iv    A copy of the notification to students that a women's varsity team selection process has begun and the announcement of the result of the process in whatever form is used to publicly announce the same information on campus, at the same time it is disseminated on campus.

             v     UCD's EADA reports, annually by December 1st, through the 2019/2020 academic year.

**B.  Monetary Relief**

    **1.  Class Representatives**

Within 30 days of the Effective Date, Defendant shall pay the sum of $8,000 to Plaintiff Brust, $8,000 to Plaintiff Bulala, and $8,000 to Plaintiff Ludwig.

    **2.  Attorneys' Fees and Expenses**

The Parties have agreed to settle Plaintiffs' claim for reasonable attorneys' fees and costs for the sum of $460,000. Plaintiffs will seek approval of the fees and costs in this amount through a motion filed with the Court. Defendant will not oppose the motion for attorneys' fees and costs. Upon approval by the Court, Defendant shall pay to Plaintiffs' Counsel the sum of $460,000, representing costs and attorneys' fees incurred in the prosecution of this case. Except as specified herein, the Parties shall bear their own costs and fees. The attorneys' fees, costs, and expenses provided for under this Section shall

1  be paid in lieu of any applicable fee-shifting statute.

2  Attorneys' fees and expenses will be paid by Defendant within 30 days of the Effective Date.

3  **IV.   CLASS NOTICE**

4  UCD shall provide Notice of the proposed settlement to class members via a posting on the
5  portal for the e-mail system used by University students ("MyUCDavis") and through publication in the
6  Davis Enterprise and Aggie newspapers.  UCD shall be responsible for all costs relating to notice.  The
7  Notice shall be substantially similar to the form attached hereto as Exhibit A.  Notice will be effected
8  after the Court's preliminary approval of this Stipulated Judgment at a time mutually agreed upon by the
9  Parties.

10  **V.   PRESS RELEASE**

11  The Parties have issued a joint press release about the settlement, containing mutually agreeable
12  language.

13  **V.   RESOLUTION OF CLAIMS**

14  **A.   Resolution of Claims by the Class**

15  The terms set forth above resolve all of Plaintiffs' class-based claims covered by this Stipulated
16  Judgment.  This Stipulated Judgment resolves all class member claims for injunctive relief based upon
17  the same predicate facts asserted in the Complaint until expiration of the Court's jurisdiction through the
18  end of the academic year 2019-2020.  Class members do not release any individual claims for damages.
19  Such claims shall be dismissed from this case without prejudice.

20  **B.   Releases by the Class Representatives**

21  Plaintiffs Brust, Bulala, and Ludwig shall be deemed to release and shall have released
22  Defendant, Chancellor Vanderhoef and Mr. Warzecka from any and all of Plaintiffs' individual claims
23  for damages and for injunctive or declaratory relief that are the subject of, included within, and/or arise
24  from this lawsuit, including all claims, liabilities, obligations, demands, actions, and claims under Title
25  IX, 42 U.S.C. § 1983 ("§ 1983"), the Unruh Civil Rights Act, and California public policy.  As a
26  condition of settlement Plaintiffs Brust, Bulala and Ludwig shall execute a full release in favor of
27  Defendant, Chancellor Vanderhoef and Mr. Warzecka for all claims referenced above.

28

      **C.**    *Mansourian, et al. v. Regents of the University of California*

Settlement of this action does not, in any way, limit or preclude Plaintiffs in the *Mansourian* action from pursuing any claims for monetary damages they may have against the Regents or any of the individual defendants in the matter of *Mansourian, et al. v. Regents of the University of California*, No. S-03-2591-FCD-EFB (E.D. Cal.).

## VI. RESOLUTION OF DISPUTES

In the case of any disputes arising out of or related to any alleged failure to perform in accordance with the terms of this Stipulated Judgment, the Parties agree to meet and confer in good faith to resolve any such dispute. Should a dispute as to any of the terms of the Stipulated Judgment arise, the aggrieved party shall provide the other party notice, and the responding party shall have 30 days to respond before the aggrieved party files any motion with the Court.

## VII. JURISDICTION

      **A.**    **Continuing Jurisdiction**

The Court shall maintain continuing jurisdiction over this lawsuit for the length of the Compliance Period, until the end of academic year 2019-2020, for the purpose of overseeing and enforcing the terms herein.

## VIII. SCOPE AND ENFORCEABILITY OF THE STIPULATED JUDGMENT

      **A.**    **Modification and Termination**

            **1.**    The terms and provisions of this Stipulated Judgment may be amended, modified or expanded only by written Stipulated Judgment of the Parties and their respective attorneys.

            **2.**    If, for any reason, this Stipulated Judgment fails to become effective, the Parties will be returned to their positions status quo ante with respect to the Action as if this Stipulated Judgment had never been entered into.

            **3.**    To the extent that the Court makes immaterial changes to the terms of the Stipulated Judgment and/or related documentation, the Parties shall nonetheless be bound to proceed. To the extent that the Court makes material changes, each of the Parties shall have the right to withdraw from this Stipulated Judgment. In such event, the Parties will be returned to their positions status quo

11

ante as if this Stipulated Judgment had not been entered into.

**B.      Authority to Bind**

The undersigned each represent and warrants that they are authorized to sign on behalf of, and to bind, Plaintiffs and Defendant, including that this Stipulated Judgment has been approved by the Regents of the University of California.

**C.      Cooperation**

The Parties agree to cooperate and execute any documents or take any action to effectuate this Stipulated Judgment in a timely and expeditious manner.  The Parties agree to cooperate in obtaining Court approval of the Stipulated Judgment and complying with the provisions herein in a timely and expeditious manner.

**D.      Independent Advice of Counsel**

The Parties represent and declare that in executing the Stipulated Judgment they relied solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims, and that they have not been influenced to any extent whatsoever in executing the same by any representations or statements not expressly contained or referred to in the Stipulated Judgment.

**E.      Sole Consideration**

The Parties agree that the consideration recited in the Stipulated Judgment is the sole and only consideration for the Stipulated Judgment and no representations, promises or inducements have been made by the Parties, other than the terms of the Stipulated Judgment.

**F.      Counterparts**

The Stipulated Judgment may be executed in counterparts.  Counterparts may be made by facsimile.  When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and each counterpart taken together shall constitute one and the same Stipulated Judgment.  The Stipulated Judgment shall be deemed duly executed, effective, and binding, upon the signing and delivery of the last counterpart by the Parties hereto.

## SIGNATURES OF THE PARTIES

DATED: _____        _____
                                      Kelsey Brust

DATED: _____        _____
                                      Jessica Bulala

DATED: _____        _____
                                      Laura Ludwig

DATED: _____        The Regents of The University of California


                                      By: _____

                                      Its: _____


## APPROVED AS TO FORM

*ATTORNEYS FOR PLAINTIFFS:*

DATED: _____        EQUAL RIGHTS ADVOCATES


                                      By: _____
                                              NOREEN FARRELL


DATED: _____        THE STURDEVANT LAW FIRM
                                      A Professional Corporation


                                      By: _____
                                              MONIQUE OLIVIER


DATED: _____        EQUITY LEGAL


                                      By: _____
                                              KRISTEN GALLES

13

S<small>TIPULATED</small> J<small>UDGMENT AND</small> O<small>RDER</small>
C<small>ASE</small> N<small>O</small>.  CIV S-03-2591 FCD EFB

*ATTORNEYS FOR DEFENDANT*:

DATED: _____    PORTER SCOTT, P.C.


By: _____
      NANCY SHEEHAN


**JUDGMENT AND ORDER**


IT IS SO ADJUDGED AND ORDERED.

DATED: October 19, 2009    _____
          FRANK C. DAMRELL, JR.
          UNITED STATES DISTRICT JUDGE